UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:17-cv-23841-PAS

**CONSOLIDATED CLASS ACTION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE
COMPANY, a foreign profit corporation,

    Defendant.
_____/

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

    Plaintiff,

v.                                                    Case No. 1:17-cv-24069-PAS

AUTO-OWNERS INSURANCE
COMPANY, a foreign profit corporation,

    Defendant.
_____/

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

    Plaintiff,

v.                                                    Case No. 1:17-cv-24066-PAS

OWNERS INSURANCE COMPANY, a
foreign profit corporation,

    Defendant.
_____/

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

    Plaintiff,

v.                                              Case No. 1:17-cv-24068-PAS

SOUTHERN-OWNERS INSURANCE
COMPANY, a foreign profit corporation,

    Defendant.
_____/

## **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Consolidated Complaint. [DE 54]. In the Consolidated Complaint [DE 48], Plaintiff alleges it is entitled to reimbursement from Defendants for payments made on behalf of Medicare beneficiaries pursuant to the Medicare Secondary Payer Act (MSPA), 42 U.S.C. § 1395y(b). Defendants move to dismiss for lack of standing and for failing to state a claim. Fed. R. Civ. P. 12(b)(1), 12(b)(6). Plaintiff filed a response [DE 57] to which Defendants replied [DE 58]. Plaintiff also filed an Affidavit of Michael Keeler [DE 60] which Defendants moved to strike as an unauthorized sur-reply [DE 62].

Standing is a threshold question that the Court must address to ensure it has subject-matter jurisdiction over the claim. While the Consolidated Complaint pleads additional facts compared to the original complaints, the allegations still fail to establish Plaintiff has standing as recognized under the MSPA. Therefore, because Plaintiff fails to allege standing to sue and the Court has already provided Plaintiff with numerous opportunities[1] to properly plead its claims, the Motion to Dismiss is granted with prejudice.

---

[1] This matter involves the consolidation of four separate cases filed by Plaintiff. The operative, consolidated complaint represents Plaintiff's fourteenth attempt at pleading its claims.

## I. RELEVANT BACKGROUND

Plaintiff is an entity whose business model involves obtaining assignments from Medicare Advantage Organizations, first-tier entities and downstream entities to recover reimbursement for payments made for the medical expenses of Medicare beneficiaries that should have been made by a private insurer pursuant to the Medicare Secondary Payer Act (MSPA), 42 U.S.C. § 1395y(b). [DE 48 ¶ 89]. Plaintiff filed this class action as the assignee of two entities—Health First Administrative Plans, Inc. and Verimed IPA, LLC—to seek reimbursement from Defendants pursuant to the MSPA. [DE 48 ¶¶ 14, 29]. Therefore, the Court must consider whether Health First Administrative Plans, Inc. and Verimed IPA, LLC have standing under the private cause of action in the MSPA, § 1395y(b)(3)(A).

### A. The Medicare Secondary Payer Act (MSPA)

Congress enacted the Medicare Act in 1965 to establish a health insurance program for the elderly and disabled. At that time, Medicare paid for medical expenses even when Medicare beneficiaries were also enrolled in third-party insurance policies that covered those same costs. *See MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1354 (11th Cir. 2016). In an effort to reduce costs, Congress passed the MSPA in 1980 which made Medicare the secondary payer, rather than the primary payer, for medical services provided to its beneficiaries when they are covered for the same services by a private insurer. *See* § 1395y(b)(2). Thus, the private insurer becomes the primary payer, as defined by the statute,[2] for medical services. However, when a primary payer cannot be expected to make a payment for a service promptly, Medicare may make conditional payments. § 1395y(b)(2)(B)(i). Once notified of its responsibility for a payment, a primary payer must reimburse Medicare for any payment made within 60 days. §

---

[2] Primary payers are generally defined as a group health plan, a workmen's compensation plan, an automobile or liability insurance plan, or no-fault insurance plan. *See* § 1395y(b)(2)(A).

1395y(b)(2)(B)(ii). In an effort to enforce this scheme, the MSPA created a private cause of action for double damages when a primary plan fails to provide payment. *See* § 1395y(b)(3)(A).

**B. Medicare Advantage Organizations, First-Tier Entities and Downstream Entities**

In 1997, Congress created Medicare Part C to give Medicare beneficiaries the option of receiving Medicare benefits through private insurers known as Medicare Advantage Organizations (MAOs). *See* 42 U.S.C. § 1395w-21. MAOs contract directly with Medicare to administer benefits for a Medicare beneficiary. *See Humana Medical Plan Inc., v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016).

An MAO may then separately contract with third-parties, known as first-tier entities and downstream entities, to provide health care or administrative services to the Medicare beneficiaries in the MAO's plan.[3] *See* 42 C.F.R. § 422.2. The MAO pays first-tier entities and downstream entities certain rates for certain categories of treatments. *Tenet Healthsystem GB, Inc. v. Care Improvement Plus South Central Ins. Co.*, 875 F.3d 584, 586 (11th Cir. 2017). Plaintiff alleges these first-tier entities and downstream entities take on the "full risk" for a Medicare beneficiary's medical care. [DE 48 ¶¶ 85, 87].

**C. Relevant Allegations of the Consolidated Complaint**

Plaintiff as assignee[4] of two entities—Health First Administrative Plans, Inc. ("HFAP") and Verimed IPA, LLC ("Verimed")—alleges Defendants are primary payers[5] which failed to perform their statutory obligation pursuant to the MSPA to reimburse Plaintiff's assignors for

---

[3] First-tier entities and downstream entities include Independent Physician Associations (IPAs). [DE 48 ¶¶ 83, 87].

[4] Defendants contest the assignments made to Plaintiff. For this Order, the Court will refer to the alleged assignors as "assignors" but does not reach the issue of the legitimacy of Plaintiff's assignments.

[5] Defendants are allegedly primary payers because they: (1) issued no-fault insurance policies to the beneficiaries; or (2) entered into settlements with the beneficiaries. [DE 48 ¶¶ 2, 4].

4

medical payments made on behalf of Medicare beneficiaries. [DE 48 ¶¶ 2, 4]. The relevant alleged facts as to Plaintiff's HFAP and Verimed claims are:

1. **HFAP:** As assignee of HFAP, Plaintiff brings three representative claims. Medicare beneficiaries J.L, J.W and P.G. were each enrolled in a Medicare Advantage plan issued and managed by HFAP, an MAO. [DE 48 ¶¶ 8, 35, 45]. The medical providers issued bills to HFAP for the medical expenses of J.L, J.W. and P.G. which HFAP paid. [DE 48 ¶¶ 11, 39, 49].

2. **Verimed:** As assignee of Verimed, Plaintiff brings two representative claims. Medicare beneficiaries S.H. and P.L. were each enrolled in a Medicare Advantage plan issued and managed by Optimum HealthCare, Inc. ("Optimum"), an MAO. [DE 48 ¶¶ 19, 55]. Optimum contracted with a first-tier entity, Verimed, to provide services to S.H. and P.L., in exchange for a fixed fee. [DE 48 ¶¶ 20, 56]. Under its contract with Optimum, Verimed: (1) incurred the cost of S.H.'s medical services provided by Springhill Regional Hospital and SDI Diagnostic Imaging; and (2) reimbursed Optimum for services P.L. received at Polk County, Central Florida Imaging Associates, and Publix. [DE 48 ¶¶ 20, 26, 60; DE 48-7; DE 48-18].

Plaintiff alleges HFAP and Verimed assigned their rights to recover conditional payments made on behalf of Medicare beneficiaries. [DE 48 ¶¶ 14, 15, 29, 30]. Both assignment agreements contain identical boilerplate language describing HFAP and Verimed broadly as a "Health Maintenance Organization, Maintenance Service Organization, Independent Practice Association, Medical Center, and/or other health care organization and/or provider . . . ." [DE 48-4; DE 48-8].

5

For each representative claim, Plaintiff contends HFAP and Verimed conditionally paid for medical services that Defendants should have paid as primary payers under the MSPA. Plaintiff seeks double damages under § 1395y(b)(3)(A), as well as a reimbursement of damages under 42 C.F.R. § 411.24(e)[6] because of Defendants' alleged failure to properly reimburse Plaintiff's assignors.

## II. STANDARD OF REVIEW

Standing is the threshold question that must be addressed prior to, and independent of, the merits of a party's claim because it addresses the Court's jurisdiction to adjudicate the claim. *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008). The party invoking federal jurisdiction bears the burden of establishing standing by showing: (1) that it suffered an injury-in-fact that is (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of (and not the result of the independent action of some third party not before the court); and (3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff must support each element of standing in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at the successive stages of litigation. *Id.*

The Court is required to carefully examine the allegations to ascertain whether a plaintiff is entitled to an adjudication of the claims asserted. *DiMaio*, 520 F.3d at 1301. There is no standing where the Court can only imagine an injury from the facts in the complaint. *Id.* The Court should not speculate concerning standing; if a plaintiff fails to meet his burden, the Court cannot embellish a deficient allegation of injury. *Id.*

---

[6] Plaintiff argues that HFAP, as an MAO, has a separate right of recovery under the MSPA regulations, specifically 42 C.F.R. § 411.24(e). [DE 57 at 22]. As discussed in this Order, HFAP is not an MAO. Therefore, even if § 411.24(e) allows for a separate right of recovery for MAOs, Plaintiff does not have standing.

6

In evaluating a standing challenge, the Court must first determine if a factual or facial challenge has been raised. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). A factual attack challenges the existence of jurisdiction irrespective of the pleadings, and matters outside of the pleadings such as testimony and affidavits are considered. *See McElmurray v. Consol. Gov't of August-Richmond Cnty.,* 501 F.3d 1244, 1251 (11th Cir. 2017). Here, Defendants make two factual attacks that: (1) HFAP is not an MAO; and (2) Verimed was not the direct provider of medical services to the beneficiaries in these claims. [DE 55 at 5, 7]. Plaintiff maintains that HFAP is an MAO, and that Verimed was the direct provider of medical services to the beneficiaries. [DE 57 at 7, 8]. Therefore, in light of the factual attacks, the Court will examine the standing of HFAP and Verimed.

### III. ANALYSIS

While Plaintiff's theory is that § 1395y(b)(3)(A) allows *any private entity* to bring a claim, the Eleventh Circuit has determined that § 1395y(b)(3)(A) is not a *qui tam* statute that authorizes any private person to sue on behalf of the government. *See Allstate,* 835 F.3d at 1363 at n.3; *see also* [DE 48 ¶ 5]. Rather, § 1395y(b)(3)(A) allows a private party to sue only where that party itself has suffered an injury under the statute. *Id.*

> The statutory language creating the private cause of action states:
>
> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

§ 1395y(b)(3)(A). Because the statute is silent, courts have interpreted the meaning of "private cause of action" to identify who may assert a claim. Thus, this Court recently examined this issue in another of Plaintiff's cases. *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.,* No. 17-CV-23749, 2018 WL 1547600, at *6 (S.D. Fl. Mar. 9, 2018).

7

In the Eleventh Circuit, MAOs have standing because the MSPA treats MAOs similarly as Medicare. *Humana,* 832 F.3d at 1233. Plaintiff misreads *Humana* to say MAOs have standing under the statute simply because they suffer an injury, just like any private party; thus, any private party may bring a claim. [DE 57 at 4]. However, MAOs suffer an injury because they make conditional payments, just like traditional Medicare. *Humana,* 832 F.3d at 1238. Additionally, § 1395y(b)(3)(A) is not a *qui tam* statute. *Id.* The Eleventh Circuit underscores standing is limited by indicating that MAOs are included within the *purview of parties* who may bring a private cause of action. *Humana,* 832 F.3d at 1236.

The Eleventh Circuit has also recognized that Medicare beneficiaries can bring a claim under § 1395y(b)(3)(A) for their medical costs paid by Medicare, and that health care providers that directly treated the Medicare beneficiary and were paid a reduced amount by Medicare can also sue under the statute. *See Humana,* 832 F.3d at 1229 (citing *Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.,* 758 F.3d 787, 790 (6th Cir. 2014)); *Glover v. Liggett Group, Inc.,* 459 F.3d 1304 (11th Cir. 2006). Therefore, under § 1395y(b)(3)(A), a plaintiff must be: (1) an MAO who has made a conditional payment for health care services to a Medicare beneficiary; (2) a Medicare beneficiary whose healthcare services were paid by Medicare; or (3) a direct health care provider who has not been fully paid for services provided to a Medicare beneficiary. If a plaintiff falls into one of these categories, it then must show: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed favorably. *See, e.g., Lujan,* 504 U.S. at 561; *Humana,* 832 F.3d 1229; *Glover,* 459 F.3d 1304; *Mich. Spine & Brain Surgeons,* 758 F.3d 787.

In this case, Plaintiff contends HFAP is an MAO and Verimed served as the direct healthcare provider in these claims. [DE 48 ¶¶ 8, 25]. Given this is a factual attack, if Plaintiff's assignors are not within the established entities that have standing, the inquiry ends there.

A. **ASSIGNOR 1: HFAP**

The Consolidated Complaint alleges HFAP is an MAO that issued and administered Medicare Advantage plans to J.L, P.G., and J.W. and paid for their medical expenses. *See supra* at 5. Defendants, on the other hand, contend HFAP is not an MAO. [DE 54 at 5]. Plaintiff's assignment agreement is unclear, broadly describing HFAP as one of many possible types of entities. *See supra* at 5-6. Because this is a factual attack, the Court may consider matters outside of the pleadings to determine if HFAP is an MAO. *See McElmurray*, 501 F.3d at 1251 (factual attacks allow the court to consider matters outside the pleadings, such as affidavits).

The Court reviewed the Centers for Medicare & Medicaid Services website, which provides an updated list of MAOs.[7] The list was most recently updated in April 2018 and HFAP is not listed. Therefore, because the Medicare website is a source which cannot be reasonably questioned, the Court takes judicial notice that HFAP is not an MAO. *See* Fed. R. Evid. 201.

Despite Plaintiff's unauthorized sur-reply, the Court reviewed the affidavit of Michael Keeler, the Chief Operating Officer of HFAP. [DE 60-1]. Keeler states that HFAP is an entity that performs administrative functions on behalf of another entity, "Health First Health Plans, Inc." It is Health First Health Plans, Inc. that contracts directly with Medicare and is an MAO.[8]

---

[7] Centers for Medicare & Medicaid Services, https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory-Items/MA-Plan-Directory.html (last visited April 24, 2018).

[8] *Id.*

9

Thus, Plaintiff's sworn affidavit contradicts its own repeated allegations that HFAP "is an MAO"—an argument it belabored in its response.[9] [DE 57 at 8].

Through Keeler's affidavit, Plaintiff appears to argue that HFAP can step in the shoes of Health First Health Plans, Inc., an MAO, to bring this claim because HFAP has the "authority to manage and act on behalf of Health First Health Plans, Inc." [DE 60-1]. The Court's review of the attached "Administrative and Financial Management Agreement" shows that HFAP only provides "administrative, management, network access, and financial services."[10] HFAP is simply a contractor to provide administrative and financial management services. Nothing in the agreement demonstrates that HFAP is contracted to pursue claims under § 1395y(b)(3)(A).

However, *even if* HFAP contracted with Health First Health Plans, Inc. to pursue claims under § 1395y(b)(3)(A), a contract for services is not an assignment of rights. HFAP cannot assign rights to Plaintiff that were not assigned to it in the first place. An assignment requires a transfer of all the interests and rights to the "thing" assigned. *MDS Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833 (11th Cir. 2013) (citations omitted). Here, the agreement Keeler provided is simply a contract for services, not an assignment. Thus, HFAP cannot assign any rights Health First Health Plans, Inc. may have under § 1395y(b)(3)(A) to Plaintiff.

Therefore, based on the Medicare website and the record evidence, the Court finds that HFAP is not an MAO. HFAP has also not been assigned any rights by Health First Health Plans, Inc., to pursue claims under § 1395y(b)(3)(A). Therefore, HFAP lacks standing under § 1395y(b)(3)(A).

---

[9] The status of HFAP is easily ascertainable on the Medicare website. Plaintiff's counsel is to remember its professional duty of candor to the Court to avoid future disciplinary issues.

[10] Services provided by HFAP include: strategic planning, consultation, coordination of benefits, financial consultation and oversight of the assets, booking, information systems support, access to HFAP's networks, and other services that may be reasonably required. [DE 60-1].

10

## A. ASSIGNOR 2: VERIMED

Plaintiff asserts that Verimed served as the direct healthcare provider to S.H. and P.L. by paying for their medical expenses. [DE 48 ¶¶ 21, 57]. On the contrary, Defendants contend that Verimed was not the direct provider of S.H.'s and P.L.'s medical services in these claims. [DE 54 at 4]. Plaintiff's assignment agreement describes Verimed broadly and does not clarify whether Verimed was the direct healthcare provider to S.H. and P.L. *See supra* at 5-6. Because this is a factual attack on Verimed's standing, the Court will resolve the dispute and determine if Verimed was the direct medical provider of S.H.'s and P.L.'s medical services. *See McElmurray*, 501 F.3d at 1251.

### 1. Verimed and S.H.

The Consolidated Complaint alleges that medical expenses for S.H. were "incurred" by Verimed. [DE 48 ¶ 26]. Plaintiff's exhibit shows that S.H. received services at Springhill Regional Hospital and SDI Diagnostic. [DE 48-7]. Verimed is not listed as a provider and the Consolidated Complaint does not allege whether there is any relationship between Verimed and the providers in the exhibit. Thus, it is clear Verimed did not provide any treatment to S.H.

Plaintiff artfully expands the term "provider" to include anyone who pays for services. [DE 48 ¶ 25]. By doing so, Plaintiff attempts to shoehorn Verimed to fit the *Ace* test where direct providers that *treated* the Medicare beneficiary have standing under § 1395y(b)(3)(A). *See Ace*, 2018 WL 1547600, at *5 (citing *Mich. Spine & Brain Surgeons*, 758 F. 3d at 790). In *Ace*, the Court relied on *Michigan Spine & Brain Surgeons*, 758 F.3d at 790, where the plaintiff was a provider who directly treated a Medicare beneficiary and received a reduced payment from Medicare. Here, that is not the case. Verimed did not provide any treatment services to S.H. and no facts demonstrate any relationship between Verimed and Springhill Regional Hospital and

SDI Diagnostic. [DE 48 ¶ 26]. Therefore, the Court finds that Verimed was not the direct healthcare provider that treated S.H. and lacks standing under § 1395y(b)(3)(A).

### 2. Verimed and P.L.

Plaintiff alleges that Verimed served as a medical provider and reimbursed Optimum for P.L.'s medical expenses pursuant to its agreement.[11] [DE 48 ¶¶ 60, 61]. However, a review of Plaintiff's exhibit shows that P.L. received services at Polk County, Central Florida Imaging Associates, and Publix Pharmacy. [DE 48-18]. Verimed is not listed as a provider to P.L. and there are no facts alleged to illustrate if there is any relationship between the providers listed and Verimed. Thus, because Plaintiff has failed to allege that Verimed was the direct provider of treatment services to P.L., Verimed lacks standing to bring this claim under § 1395y(b)(3)(A).

## IV. CONCLUSION

Plaintiff has failed to allege its original assignors have standing under § 1395y(b)(3)(A). Plaintiff's theory is that § 1395y(b)(3)(A), by virtue of providing a private cause of action, provides standing to all private parties. However, § 1395y(b)(3)(A) is not a *qui tam* statute; only Medicare beneficiaries, MAOs, and providers that directly treated the Medicare beneficiaries have standing to bring a claim under § 1395y(b)(3)(A).

Despite its fourteenth attempt at pleading its claims, Plaintiff has still failed to allege that any of its assignors are Medicare beneficiaries, MAOs or medical providers that directly treated the Medicare beneficiaries in these claims. As the evidence shows, this fatal defect cannot be

---

[11] Verimed apparently seeks reimbursement for a payment made pursuant to Optimum under the terms of its private capitation contract. Thus, if Verimed suffered a loss, it was a result of its contractual relationship with Optimum. Its claim must instead be determined by reference to the written contract. *See Provident Care Mgmt., LLC v. Wellcare Health Plans Inc.,* Case No. 16-CV-61873-BB, (S.D. Fla. Feb. 1, 2018) ("A contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act.")

cured. Plaintiff's assignors simply are not within the purview of parties who can bring a claim under § 1395y(b)(3)(A).

Therefore, because Plaintiff's own evidence confirms that it cannot allege facts to show standing, the Court lacks subject-matter jurisdiction to hear this case. The Court need not allow an amendment when there has been "repeated failures to cure deficiencies" by previously allowed amendments. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (citations omitted). Therefore, the Court finds it is in the best interest of judicial economy to grant the motion with prejudice. Accordingly, it is

ORDERED THAT

(1) The Motion to Dismiss [DE 54] is **GRANTED WITH PREJUDICE.**

(2) All pending motions are **DENIED AS MOOT.**

(3) This case is **CLOSED.**

DONE and ORDERED in Miami, Florida, this 24th day of April, 2018.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record