**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 17-23841-CV-SEITZ

MSP RECOVERY CLAIMS, SERIES LLC,
MSP RECOVERY CLAIMS SERIES 44, LLC

      Plaintiffs,

v.

AUTO-OWNERS INSURANCE COMPANY,
SOUTHERN-OWNERS INSURANCE
COMPANY, and OWNERS INSURANCE
COMPANY.

      Defendants.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Plaintiffs' Motion for Class Certification [DE 109]. The Motion is fully briefed [DE 109, 114, 116]. The Court has considered the foregoing, the record, and the applicable law. Plaintiffs have failed to define the classes in a manner which are ascertainable and adequately defined. Further, reasonable interpretations of the class definitions result in individualized attention to defenses to liability or offsets on reimbursable amounts. As such, Plaintiffs have not satisfied the Federal Rule of Civil Procedure Rule 23 requirements. Thus, Plaintiffs' Motion is DENIED.

## I.   Background[1]

Plaintiffs, as assignees of Medicare Advantage Organizations[2] ("MAOs)

and downstream entities, bring this putative class action to recover from

Defendants, no-fault auto insurers, automobile accident-related medical payments

the MAOs and downstream entities allegedly paid on a conditional basis.  Plaintiffs

allege that the Defendants were obligated to pay these conditional payments but did

not.  Plaintiffs seek not only reimbursement but also double damages from

Defendants.[3]

## II.  Legal Standard

### A.      Medicare Secondary Payer Act

Medicare contracts with private MAO entities and other downstream

entities to pay certain Medicare beneficiaries' healthcare costs.  *See MSP Recovery*

*Claims, Series LLC v. American Nat'l Prop. & Casualty Co.*, 550 F. Supp. 3d 1311,

1314 (S.D. Fla. July 22, 2021) (citing *MSP Recovery Claims, Series LLC v. ACE Am.*

*Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020)).  The Medicare Secondary Payer Act

("MSPA") made Medicare coverage secondary to other forms of insurance.  *See id.*  If

a Medicare beneficiary has overlapping coverage arising from Medicare and another

---

[1] The Eleventh Circuit has aptly summarized the background of this case in an earlier appeal [DE 70]. Thus, the Court focuses on the facts most pertinent to this Motion.

[2] Medicare Advantage is an alternative way for Medicare beneficiaries to receive coverage. Instead of through a plan administered directly by the government, coverage is through a private insurer approved by Medicare.

[3] This is one of a number of cases that Plaintiffs and their affiliates brought under the MSPA.

insurer, MAOs may make "conditional" payments on behalf of beneficiaries to healthcare providers, but the primary insurer must reimburse the MAO for those payments. *See id*. at 1308–09.[4]

To help ensure Medicare is not saddled with costs that should be covered by primary insurance payers, liability and no-fault insurers must report to the Center for Medicare & Medicaid Services ("CMS") when they may have primary payer responsibility for the healthcare costs of Medicare beneficiaries. *See* 42 U.S.C. § 1395y(b)(8). In addition, the MSPA creates a private cause of action against primary payers that fail to reimburse MAOs for conditional payments made on behalf of Medicare beneficiaries. *See id*. § 1395y(b)(3)(A); *see also ACE Am. Ins. Co.*, 974 F.3d at 1316 (holding any MAO or downstream entity suffering unreimbursed conditional payments may bring claims under section 1395y(b)(3)(A)).

Specifically, § 1395y(b)(3)(A) establishes a private cause of action for damages, ". . . in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and 2(A)." Relevant for this case, 2(A) refers to 2(B) entitled "Conditional Payment" which provides that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate [Medicare entity]" for any conditional payment with "respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or

---

[4] Overlapping coverage can occur for example, when a Medicare beneficiary is injured in an automobile accident involving a party insured by a liability or no-fault insurance policy, if the circumstances and policy obligate the primary payer to cover the beneficiary's healthcare.

service." § 1395y(b)(2)(B)(ii).[5] Thus, to bring a private cause of action against a

primary payer for reimbursement, MAOs and downstream entities must

demonstrate the primary payer's responsibility prior to commencing the suit. *See*

*Glover v. Liggett Group, Inc.* 459 F.3d 1304, 1309 (11th Cir. 2006) (examining 42

U.S.C. § 1395y(b)(3)(A)). A primary plan's responsibility for such payment may be

demonstrated by a judgment, a payment conditioned upon the recipient's

compromise, waiver, or release (whether or not there is a determination or

admission liability) of payment for items or services included in a claim against the

primary plan or the primary plan's insured, or by other means. § 1395y(b)(2)(B)(ii).

These statutory parameters create an insurmountable hurdle for Plaintiffs in this

action.

> B.     Class Certification

As an "invention of equity," class actions serve many useful purposes,

including promoting efficient use of judicial resources. *Phillips Petro. Co. v. Shutts*,

472 U.S. 797, 808 (1985). In addition, this procedural vehicle "may permit the

plaintiffs to pool claims [that] would be uneconomical to litigate individually." *Id.*

at 809. Class certification, however, is an "exception to the usual rule" that parties

---

[5] The conditional payment provision provides:

> [A] primary plan . . .shall reimburse the appropriate Trust Fund for any payment
> made by the Secretary under the subchapter with respect to an item or service if is
> demonstrated that such primary plan has or had a responsibility to make payment with
> respect to such item or service. A primary plan's responsibility for such payment may be
> demonstrated by a judgment, a payment conditioned upon the recipient's compromise,
> waiver, or release (whether or not there is a determination or admission liability) of
> payment for items or services included in a claim against the primary plan or the primary
> plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii).

litigate on behalf of themselves. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). The party seeking class certification bears the burden of proof. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). District courts have broad discretion whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted).

A proposed class must first be "adequately defined and clearly ascertainable." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). If this prerequisite is met, courts then turn to the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.[6] *Sellers v. Rushmore Loan Mgmt. Servs.*, LLC, 941 F.3d 1031, 1039 (11th Cir. 2019). A plaintiff must also meet the requirements of Federal Rule of Civil Procedure 23(b). *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (citation omitted). To certify a Rule 23(b)(3) class action, questions of law or fact common to class members must predominate over any questions affecting only individual members,

---

[6] Rule 23(a)'s requirements include the following:

> (1) the class is so numerous that joinder of all members is impractical ["numerosity"];
>
> (2) there are questions of law or fact common to the class ["commonality"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed. R. Civ. P. 23(a).

and the class action must be "superior to other available methods." *Carriulo*, 823 F.3d at 985.

The court must conduct a "rigorous analysis" to determine whether the party proposing class certification has met its burden. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted). This is not a pleading standard; Rule 23 must be satisfied with evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). This analysis may "'entail some overlap with the merits of the plaintiff's underlying claim," but the court may not engage in "free-ranging merits inquiries" at this stage. *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 465-66 (2013) (citations omitted). A court may consider the merits only "to the degree necessary" to analyze Rule 23. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006) (citation omitted).

### III. Parties' Positions

A. Overview

As discussed above, Plaintiffs seek to certify a class of plaintiffs comprised of MAOs and downstream entities that made conditional payments for automobile-accidents medical claims, or in settlement of those claims, on behalf of Medicare beneficiaries who also had insurance coverage with Defendants. [DE 109 at 9].[7]

---

[7] With reference to the online Centers for Medicare & Medicaid Services MA Plan Directory, Plaintiff claims that 937 MAOs, along with hundreds of first-tier and downstream entities, have claims against Defendant. Plaintiff contends it can quickly identify these claims, using a computer-run proprietary set of protocols, if it can be

Plaintiffs contend that this action is appropriate for class action because proof of the class member claims can be accomplished by common evidence.  Namely, Plaintiffs assert that its proprietary data search protocols, which include the use of their software, will eliminate need to litigate individualized liability.  According to Plaintiffs, when the Plaintiffs' matching system is employed, whoever is on the resulting list is entitled to relief because it represents either no-fault insurance covered claims or settled liability claims with MAO plan beneficiaries where the class member made a reimbursable payment.  Finally, as detailed further below, Plaintiffs argue that they otherwise satisfy Rule 23's requirements.

Defendants charge that Plaintiffs have improperly expanded and simultaneously defined a fail-safe class.  They also argue that Plaintiffs have failed to satisfy any requirement of Rule 23.

### B.  Second Amended Class Action Complaint

In their Second Amended Class Action Complaint for Damages ("SAC"), Plaintiffs allege that Defendants systematically failed to repay Medicare liens, in violation of the MSPA [DE 98].  Plaintiffs assert a private cause of action for double damages under the MSPA's provisions, namely 42 U.S.C. § 1395y(b)(3)(A) [DE 98 at 2,15].  The elements of the private cause of action are: 1) a defendant's status as a primary plan; 2) a defendant's failure to provide for primary payment or appropriate reimbursement; and 3) damages.  The SAC alleges that Defendants' no-

---

permitted to analyze Defendant's data, any of its third-party claims' administrator settlement data, and putative class members' data.

fault and liability policies are primary plans, which render Defendants primary payers for accident-related medical expenses under 42 U.S.C. § 1395y(b)(3)(B)(ii). The SAC identifies several assigned representative entities, such as AvMed, Blue Cross and Blue Shield of Massachusetts, Inc., Health Alliance Medical Plans, Inc., and Health First Health Plans, Inc. Plaintiffs also list 67 exemplars of these entities' claims for 1) unreimbursed Medicare liens; 2) liens arising from settlements; and 3) liens arising from no-fault policies. [DE 98 at 3-5]. Thus, Plaintiffs maintain Defendants are liable to MAOs and downstream entities for reimbursement of conditional payments. [DE 98 at 15].

Defendants' Answer raises eleven Affirmative Defenses, including: failure to meet the threshold amount of the MSPA; statute of limitations, failure to sue the correct party, lack of standing, failure to exhaust administrative remedies, and improper attempt to collect duplicate payments. [DE 106 at 24-30]. Defendants also raise a variety of contract defenses, *e.g.* failure to establish that the treatments at issue were related to the accidents in question, failure to establish that the treatments at issue were for medically necessary services, failure to establish that the claims at issue pertained to insurance policies with unexhausted limits. Defendants additionally contend that coverage was denied on some claims due to specific applicable coverage or applicable state insurance laws. [DE 106 at 26-27].

Defendants further assert that Plaintiffs cannot show that Defendants violated the MSPA or are liable for double damages because Plaintiffs failed to provide notice of the conditional payments, and, because for several of the claims,

although Defendants reported the claims to Medicare, they were advised that no liens existed.  [DE 106 at 26-27].  For almost every one of the Affirmative Defenses, Defendants specifically point to one of Plaintiffs' exemplar claims as an example of an exemplar meeting that particular defense.

C. Putative Class Definitions

Plaintiffs' definitions of the two putative classes have evolved.  The Plaintiffs explained the reason for the change was to "streamline and clarify" the class membership and to remove any link between membership and liability to avoid impermissible fail-safe class definition. [DE 109 at 12, fn 4].

In the SAC, Plaintiffs assert two putative class definitions:

### Contractual Obligations Class

All non-governmental organizations, and/or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for automobile accident-related medical items and services on behalf of their beneficiaries, for which the Defendants have provided no-fault insurance coverage related to the medical items and services involving automobile accidents, and for which the Defendants have not reimbursed in full or in part.

### Settlement Class

All non-governmental organizations, and/or their assignees that provide benefits under Medicate Part C, in the United States of America and its territories, who made payments for medical items and services on behalf of their beneficiaries for which Defendants have not reimbursed in full or part after Defendants entered into settlement with Medicare Beneficiaries enrolled in a Medicare Advantage Plan.[8]

[DE 98 at 12-13].

---

[8] Both class definitions exclude (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judge and judge or justices involved in this action and any member of their immediate families.

Plaintiffs' Motion for Class Certification offers two new class definitions:

### **The No-Fault Class**

All MAOs and downstream entities that provide benefits under Medicare Part C, in the United States of America and its territories, who made conditional payments as secondary payers for automobile accident-related medical items and services on behalf of their beneficiaries who also had first-party insurance coverage, such as no-fault and medical payments insurance coverage, with the Defendants.

### **The Settlement Class**

All MAOs and downstream entities that provide benefits under Medicare Part C, in the United States of America and its territories, who made conditional payments as secondary payers for medical items and services on behalf of their beneficiaries who also had third-party insurance coverage, such as bodily injury insurance coverage, with the Defendants.

[DE 109 at 11].

## IV. Legal Analysis

### A. Ascertainability and Inadequate Class Definition

#### 1. Ascertainability

Rule 23 implicitly requires that a proposed class be "adequately defined" and "clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021). A proposed class is clearly ascertainable if its membership is "capable of being determined." *Id.* at 1303 (citation omitted). An inadequate class definition contains "vague or subjective criteria." *Id.* at 1302. While these terms ("adequately defined" and "clearly ascertainable") are separate, the inquiry is "collapsed" into one. *Id.* at 1302 (citation omitted).[9]

---

[9] Administrative feasibility may be relevant to "the manageability criterion of Rule 23(b)(3)(D)," but that provision requires a "comparative" analysis that is incompatible with a threshold, standalone administrative feasibility requirement. *Cherry*, 986 F.3d at 1304.

The Certification Motion makes several changes to the two proposed classes. In both proposed classes, the words "such as" expands the class to types of coverage the Defendants may provide to a beneficiary that overlaps with coverage that the MAO may provide. Additionally, both definitions omit the words "for which Defendants have not reimbursed in full or part after Defendants entered into settlements." Lastly, both definitions add the words "conditional" and "as secondary payers," which are legal terms requiring factual proof to meet the legal definition. As to the "Contractual Obligations Class," it changes the title to "No-Fault Class." For the "Settlement Class," by removing the word "settlement" from the newly defined class, the definition does not require that a beneficiary receive any type of compensation from the Defendants to qualify as a class member.

The Plaintiffs attempted to narrow the class by changing the definitions from "[a]ll non-governmental organizations, and/or their assignees" to "[a]ll MAOs and downstream entities." As such, the Court interprets the new definitions to mean each class member must be a Medicare Part C provider who made a conditional payment for a Medicare beneficiary for medical treatment received following an automobile accident which a Defendant is ultimately responsible for under either first-party (no-fault) insurance coverage or third-party insurance coverage. Plaintiffs have not added either additional causes of action or defendants, which would prejudice the Defendants in defending this action. See *Lawrence v. S.*

---

The court must weigh any manageability concerns against the advantages of proceeding as a class action. *Id.*

*Fla. Racing Ass'n, LLC*, No. 18-CV-24264-UU, 2019 WL 3890314, at *5 (S.D. Fla. June 28, 2019) (rejecting class certification where plaintiff amended class definition to expand scope of class). Thus, neither new definition is overbroad in that sense. However, viewing the new definitions in the light most favorable to the Plaintiffs, the Court concludes the definitions are not ascertainable and are vague.

By removing the language as to reimbursement and settlement in the "Settlement Class" definition, the Plaintiffs have left the Court with more questions than answers regarding who shall receive notice as members of the class. This definition potentially includes in the class members who may not have been injured, such as Medicare beneficiaries who also happen to have any type of overlapping first-party or third-party insurance coverage. *Walewski v. Zenimax Media, Inc.*, 502 Fed. App'x 857, 861 (11th Cir. 2012) (finding overbroad class definition which included potentially uninjured parties). Therefore, the Settlement Class definition is vague given the fact that it potentially opens the class to non-qualifying members.

While the mere presence of uninjured class members does not necessarily preclude class certification, "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Ohio State Troopers Ass'n, Inc.*, 481 F. Supp. 3d at 1274, aff'd, No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021) (citing *Cordoba*, 942 F.3d at 1275–76). In addition, Plaintiffs failed to describe any sort of mechanism for identifying other MAOs or downstream entities, other than MSP, who made

conditional payments under Medicare Part C for beneficiaries who either had first party insurance with the Defendants (the No-Fault Class), or third-party insurance with the Defendants (the Settlement Class). Thus, given the proposed class definitions, the class is not ascertainable.

### 2. Inadequate Class Definition

If the Court could give notice to class members under the Plaintiffs' new definitions, the inevitable result is a fail-safe class. A fail-safe is a class that only includes those who are first determined to be entitled to relief. *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). Such a class "precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class." *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012) (citation omitted). *Id.* at 370 (citations omitted). The Eleventh Circuit has declined to "promot[e]" fail-safe classes but has not expressly forbidden them. See *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276–77 (11th Cir. 2019). Other courts, however, have found them impermissible. *Atlantic Specialty Ins. Co.* at *2.

Even though the Plaintiffs have tried, the new definitions do not avoid fail-safe issues. Class member eligibility in both the SAC and Motion for Class Certification hinge on elements that mirror the exact elements necessary to establish Defendants' liability. Specifically, the new definitions both note that the Plaintiffs are seeking to recover "conditional payments as secondary payers." Such legal definitions require individual litigation to determine whether a class member

is in fact a secondary payer who made a conditional payment for which reimbursement is deserved.  This is a classic fail-safe class. *See*, e.g. *MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019) (striking class action where a finding of liability was a prerequisite for class membership.  At least one Florida District Court has rejected Plaintiffs' contention that such a class was ascertainable and did not create a "fail-safe" class. *MSP Recovery Claims Series, LLP v. Atlantic Specialty Insurance Company*, 2021 WL  6750961 (M.D. Fla., Case No. 6:20-cv-553-RBD-EJK, Signed 12/27/2021). Notwithstanding these serious prerequisite ascertainability issues, the request for class certification meets only one of Rule 23(a)'s four requirements and most importantly fails under Rule 23(b)(3)'s predominance requirement.

      B.  Fed. R. Civ. P. 23(b)(3)[10]

      1.  Questions of Law and Fact Do Not Predominate

Rule 23(b)(3) first requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and then "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[11]

---

[10]  There is no requirement that a court address Rule 23(a)'s elements before reaching Rule 23(b)(3)'s predominance test. Notwithstanding, the Court also addresses Rule 23(a) issues *infra*.

[11]  The rule sets forth four specific (though non-exclusive) considerations pertinent to these findings: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*

Certification is inappropriate when, "after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims." *Sellers*, 941 F.3d at 1040.

In this case, determining whether Defendants failed to make required payments under the MSPA provisions and failed to reimburse class members will require an individualized and fact-specific answer, not merely for each putative class member, but for each of every purported class member's allegedly unreimbursed claims.  To avoid this conclusion, Plaintiffs assert that "Defendants' liability to the class members will depend on the historical decision made on these no-fault or bodily injury claims, which are electronically stored in data or business records." [DE 116 at 2].  However, Plaintiffs' own description illustrates that any liability determination would necessarily require this Court to examine Defendants' decisions made as to every no-fault policy insured and each settlement made with a Medicare beneficiary.

Moreover, Plaintiffs' data matching protocols only identify *potential* claimants who were not reimbursed, rather than *actual* claimants, and do not explain Defendants' reason for not paying the conditional payment sum, in part, or in full.[12]  Rather Defendants' reason for not reimbursing for a particular medical

---

[12] In their Motion for Class Certification, Plaintiffs explained that they have designed and developed a data-matching protocol that allows Plaintiffs to "identify overlapping coverage." [DE 98 at 14]. Plaintiffs contend such methodology ultimately provides a list of "conditional payments related to injuries sustained in an accident, where Defendants either (1) settled a BI claim or (2) accepted coverage under a no-fault policy." [DE 98 at 15].

treatment, even if that reason is captured in a business code, would still require the Court to evaluate whether that reason was a valid reason or constituted a violation of the MSPA. *See*, e.g., *Plymouth Rock*, 404 F. Supp. 3d at 485 (finding denial of class certification appropriate on Rule 23 grounds where court must conduct individualized and fact-specific inquiries); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, No. 16-20212, 2018 WL 4963245, at *4 (S.D. Fla. Sept. 28, 2018) (stating common issues would not predominate in similar MSPA action where court would need to evaluate a "multitude of individual issues.")

Further, to the extent Plaintiffs contend that liability is automatically determined once Defendants' primary payer responsibility is demonstrated, that contention misapprehends the way the private cause of action liability is established under the MSPA. Rather, a secondary payer may only bring an action under § 1395y(b)(3)(A) once it demonstrates that a defendant is in fact the primary payer that failed to make a payment, and that the plaintiff suffered damages as a result. *Humana Medical Plan, Inc., v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016) (setting forth private action elements in evaluating summary judgment motion). In *Humana*, for example, the Eleventh Circuit concurred with the District Court's determination that Defendant Western was a primary plan because it was a liability insurer that pursuant to a settlement agreement paid to an MAO plan enrollee for covered medical expenses. *Id.* The Court nonetheless went on to examine whether Western as a primary plan provider—demonstrated by

its settlement with the beneficiary—failed to provide primary payment or reimbursement as required under the MSPA.

Similarly, in *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312 (11th Cir. 2019), the Eleventh Circuit made clear that § 1395y(b)(2)(B) ("Conditional Payment") only provides a private cause of action when an entity's status as a primary plan has been demonstrated. *Id.* at 1321-22.  In other words, once it is established that an MAO made a conditional payment and it is demonstrated that an insurance company defendant is a primary plan that may have reimbursement responsibility, such facts are only sufficient to establish that the MAO may proceed under the MSPA private cause of action.  Those facts do not establish the insurance company's liability for failing to provide primary payment or appropriate reimbursement.

Likewise, in *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F 3d 1351 (11th Cir. 2016), the reviewing court held that a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSPA.  *Id.* at 1361.  It further held that satisfying that precedent did not relieve plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that defendants' valid insurance contracts actually render defendants responsible for primary payment of the expenses plaintiffs seek to recover.  The court further stated that defendants may still assert any valid contract defense in arguing against their liability.  In short, although a

17

contractual obligation may satisfy the demonstrated responsibility requirement, that contractual obligation does not conclusively determine liability under MSPA.

The facts and holdings of *Humana, Tenet,* and *Allstate* do not support Plaintiffs' arguments for class certification.  If the putative classes are composed of hundreds of entities and represent thousands of unreimbursed claims as Plaintiffs contend, that will consequently lead the Court to consider thousands of individual claims, settlement agreements, injuries, contractual defenses, and so on.  Taking Plaintiffs' case as a stand-alone cause of action, containing five downstream entities, demonstrates how individualized assessing Plaintiffs' claims are.  As such, common issues do not predominate beyond establishing, through Plaintiffs' data matching software, that Defendants may *potentially* be a primary plan. [13]

2. Class Action Treatment is Not Superior

Rule 23(b)(3) also requires a finding "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  For the same reasons discussed above related to predominance, class action is not superior to other available methods for resolving Plaintiffs' claims.  In addition to the need for the Court to examine each reason that the Defendants did not adequately reimburse for the conditional payments to determine liability, it is not even clear whether all of the underlying claimants are covered by applicable policies, are

---

[13] Even that issue would not be entirely resolved by class certification, as Defendants deny that they are a primary plan with reimbursement responsibility for several of the exemplar claimants.

insured by Defendants, or whether Defendants owe other MAOs or downstream entities additional sums, at all.

### C.  Plaintiffs Are Unable to Meet Rule 23(a)'s Requirements

As explained below, in addition to failing to meet the requirements of Rule 23(b)(3), Plaintiffs failed to present sufficient evidence to satisfy all of the Rule 23(a) prerequisites.  Plaintiffs only satisfy one.

#### 1.  *Numerosity*

Rule 23(a)'s numerosity element requires that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Although numerosity is a "generally low hurdle," it is, nonetheless, a hurdle.  *Vega v. T-Mobile*, 564 F.3d 1256, 1267 (11th Cir. 2009).   While mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class.  *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983). Further, Plaintiffs still bear the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement. *Id.*

Plaintiffs contend that there are 937 directly contracted MAOs and hundreds of first-tier and downstream entities with MSP Act claims against Defendants. [DE 109 at 19].  Plaintiffs also provide exemplars of five allegedly injured MAOs and downstream entities, representing more than fifty claims. Defendants do not seriously challenge this assertion.  In fact, Defendants, in attacking Plaintiffs' class definition, concede that "downstream entities" may be any

type of medical provider who provides services to an MAO patient.   Thus, based upon the number of potential downstream entities and other MAOs, in conjunction with Plaintiffs' sixty-seven provided exemplar entities, the Court finds that Plaintiffs satisfy the low hurdle of Rule 23(a)(1)'s numerosity requirement.

### 2.   Commonality

Rule 23(a)'s commonality requirement demands only that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Commonality" does not require that all the questions of law and fact raised by the dispute be common, or that the common questions of law or fact "predominate" over individual issues. *Vega*, 564 F.3d at 1268 (quotations and citations omitted).  Rather under this requirement, a class action must involve issues that are susceptible to class-wide proof." *Id.* at 1269 (quotations and citations omitted).

Plaintiffs identify the following as common questions for the No-Fault Class: 1) whether overlapping coverage exists (a common factual question) giving rise to primary payment responsibility (a common legal questions); 2) whether Defendants accepted coverage (a common factual question) giving rise to primary payment responsibility (a common legal question); and 3) whether Defendants repaid the Medicare liens (a common legal and factual question). [DE 109 at 20]. Plaintiffs contend that the same common questions apply to the Settlement Class and that objective data will provide class-wide answers to the common questions. [DE 109 at 20].  Rule 23(a)(2)'s commonality requirement is a "relatively light burden."  *Id*. at 1268.  Yet, given the issues regarding the class definitions and

liability determinations discussed in earlier in Sect. IV, Plaintiffs fail to satisfy this requirement.

While Plaintiffs have described common questions of law and fact, those questions are not "susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The determination will be specific for a given putative class member, precluding Plaintiffs' ability to offer "proof [that] the court can resolve the questions of law or fact in 'one stroke'." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 693 (S.D. Fla. 2014) (citation omitted). Plaintiff seems to argue the efficiency of its data-matching system as the simple stroke, but that does not make the question one the Court could make for all or even a portion of class members. By its very nature, the answer to the question will apply to a given claim, not a class or subclass.

As a result, the Court acknowledges that the commonality requirement is a relatively low bar but is not persuaded that it could reach a class-wide determination on Plaintiffs' proposed questions that is not either already resolved by the class definition, or only applies to a given class member. Plaintiffs' Motion does not suggest any additional question of law or fact, nor has the Court identified one. Therefore, the Court finds that Rule 23(a)(2)'s requirement has not been met.

### 3. *Typicality*

Typicality requires that "the claims or defenses of the representative parties are typical of...the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in

order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega* at 1275 (citing *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (quotations and internal citations omitted; alteration in original). Although typicality and commonality may be related, the two concepts are distinguishable— "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Id.* (citing *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)).

For the same reasons discussed in Sect. IV.A. regarding the Plaintiffs' class definition issues, the Court is unable to determine whether there is a significant nexus between Plaintiffs' claims (as the named representative) and the class at large to satisfy the typicality requirement.  It is unclear how many other potential class members are in the same "shoes" as the Plaintiffs.  Remaining unanswered are the questions of: whether those other potential plaintiffs received their right to sue Defendants through an assignment, whether that assignment is valid, whether the putative members made conditional payments on the same basis, whether the beneficiaries were covered under Defendants' same or similar overlapping insurance policies, whether the putative class members were reimbursed in part, or full, and whether the defenses raised by the Defendants as to the underlying claims for those MAOs and downstream entities will be the same as those raised as to the exemplar claims.  Those questions go to the heart of whether the exemplar claims' individual

characteristics are typical of the putative class members, and thus the Court is unable to conclude that Plaintiffs have met their burden under this prong.

### 4.  Adequacy

Likewise, while the parties hotly contest whether counsel would be appropriate to represent any class, given the above rulings, the Court "declines [the] invitation to explore this unnecessary fray." *See Bouton*, 322 F.R.D. at 700.  The Court simply notes that Plaintiff's organizational structure and ownership built upon privately compiling as many MSP Act claims as possible, calls into question whether Plaintiff is best suited to represent any putative class.

### V.  Conclusion

At bottom, for the reasons discussed above, this action is not suited for class-action management and resolution.  Plaintiffs are unable to meet their initial burden of demonstrating that the class is ascertainable and adequately defined. The class definitions either determine liability or result in individualized attention to defenses to liability, which runs afoul of the Rule 23 requirements. Therefore, it is

**ORDERED THAT**

1. Plaintiffs' Motion for Class Certification [DE 109] is DENIED.

2. Plaintiffs' Motion for Hearing on this Motion [DE 118] is DENIED as moot.

DONE AND ORDERED in Miami, Florida, this 7th day of June, 2022.

PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE